IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

LAWRENCE TOOLE,

                               Plaintiff,

                v.                        Civil Action No.
                                      9:04-CV-0724 (LEK/DEP)

SUSAN A. CONNELL, *et al.*,

                               Defendants.

_____

APPEARANCES:                    OF COUNSEL:

FOR PLAINTIFF:

LAWRENCE TOOLE, *pro se*

FOR DEFENDANTS:

HON. ANDREW CUOMO        DAVID L. COCHRAN, ESQ.
New York State Attorney General    Assistant Attorney General
The Capitol
Albany, New York 12224

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE


REPORT AND RECOMMENDATION

      Plaintiff Lawrence Toole, a New York State prison inmate who is

proceeding *pro se* and *in forma pauperis*, has commenced this action

pursuant to 42 U.S.C. § 1983, claiming deprivation of his civil rights.   In his

complaint, plaintiff alleges that 1) he was sexually harassed by Corrections Officer Prusinowski; 2) the remaining defendants failed to fulfill their responsibilities to investigate and remediate the constitutional deprivation associated with that sexual harassment , including by their failure to properly address his grievances concerning the matter; and 3) a misbehavior report was issued against him in retaliation for complaining of the sexual harassment, all in violation of his constitutional rights.

Having already succeeded in securing dismissal of plaintiff's sexual harassment claim against defendant Prusinowski, based upon a finding that the factual allegations offered in support of that cause of action, even if proven, do not rise to a level sufficient to establish an Eighth Amendment violation, defendants now move for summary judgment in their favor dismissing the balance of plaintiff's complaint as a matter of law.  In their motion, defendants assert that because the underlying sexual harassment did not rise to a level of constitutional significance, there can be no corresponding liability on the part of the other defendants for failing to investigate the matter and remedy the claimed harassment.  Noting that plaintiff has no constitutional right of access to the internal prison grievance process, and that the record is lacking in any evidence linking

the issuance of the disputed misbehavior report – authored by an individual who is not a party to the action – to plaintiff's efforts to obtain redress for Corrections Officer Prusinowski's behavior, defendants seek dismissal of plaintiff's remaining claims.

Having carefully reviewed the record now before the court, considered in light of the arguments raised by the defendants and in plaintiff's opposition to their motion, I conclude that no reasonable factfinder could determine that plaintiff's constitutional rights were abridged based upon the acts complained of in his complaint.  Accordingly, I therefore recommend that defendants' motion be granted.

I.    BACKGROUND[1]

At the times relevant to his complaint plaintiff was a prison inmate entrusted to the custody of the New York State Department of Correctional Services ("DOCS"), and designated to the Oneida Correctional Facility ("Oneida").  *See generally* Complaint (Dkt. No. 1).  On February 5, 2004, while confined within a dormitory unit at Oneida, plaintiff awoke to someone, later identified as Corrections Officer H. Prusinowski, shaking

---

[1]    In light of the procedural posture of the case, the record now before the court has been interpreted in a light most favorable to the plaintiff, as a non-moving party, with all inferences drawn, and ambiguities resolved, in his favor.  *See Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005).

3

his buttocks and standing over him, smiling.[2]  Complaint (Dkt. No. 1) Exh.

A.  Defendant Prusinowski, who according to Toole at the time was acting

in a sexually provocative manner, asked the plaintiff to accompany him to

the laundry room, ostensibly to engage in sexual activity.  *Id.*  After being

asked by plaintiff to leave his cell, defendant Prusinowski stated, "you don't

know what you're missing", and left the area.  *Id.*  In his complaint, plaintiff

alleges that Officer Prusinowski had previously appeared in Toole's cube

on February 3, 2004, and again on February 4, 2004, in an intoxicated

condition "seeking homosexual liaison."  *Id.*  Following the February 5,

2004 incident plaintiff attempted to apprise the area supervisor of the

situation, but was directed by defendant Prusinowski to "get the f_ _k away

from the desk."  *Id.*

On February 20, 2004 plaintiff filed a grievance with the Inmate

Grievance Resolution Committee ("IGRC") at Oneida, claiming that

defendant Prusinowski had sexually harassed him on February 3, 4, and 5,

2004.  Complaint (Dkt. No. 1) Exh. A.  In addition to detailing his

encounters with defendant Prusinowski, in that grievance plaintiff also

---

[2]    While Corrections Officer Prusinowski was initially sued as C. Prusinowski, a
subsequent application by plaintiff to amend his complaint to identify the intended
defendant as H. Prusinowski was granted on March 1, 2005.  Dkt. No. 10.

complained that his attempt to report the February 5, 2004 incident to the desk sergeant had been unsuccessful, and asserted that defendant Prusinowski had arranged to have Toole transferred to a different prison dormitory unit on February 6, 2004.[3]  *Id.*

Because Toole's grievance alleged harassment by a staff member, it bypassed the IGRC stage of the normal grievance process and was forwarded directly to the superintendent's office for a determination. Debejian Decl. (Dkt. No. 53-7) ¶ 6.  Toole's grievance was subsequently denied by Oneida Superintendent Connell on March 12, 2004.  Complaint (Dkt. No. 1) Exh. B.  As a basis for her determination, defendant Connell relied principally upon Prusinowski's denial of having engaged in any inappropriate behavior and the lack of any evidence tending to independently substantiate Toole's allegations.  *Id.*

Plaintiff appealed the denial of his grievance to the Central Office Review Committee ("CORC").  Complaint (Dkt. No. 1) Exhs. B, C.  By decision dated April 14, 2004, Toole's appeal was "unanimously denied with clarification."  In its decision the CORC found that the sexual harassment complaint was properly investigated at the facility level, and

---

[3]   That transfer was later rescinded.  Complaint (Dkt. No. 1) Exh. A.

5

that substantiation of plaintiff's allegations was lacking.[4]  *Id.* Exh. C.

Plaintiff was issued an inmate misbehavior report on March 13, 2004 by Corrections Sergeant J. Allison, accusing him of lying regarding the February 5, 2004 incident in violation of prison rules.[5]  *Id.* Exh. D.  In that misbehavior report, Sergeant Allison alleged that as the desk supervisor to whom plaintiff allegedly tried to complain, he did not observe either any attempt on the part of plaintiff to lodge a complaint or defendant Prusinowski making the statement which the plaintiff now attributes to him, adding that Toole "was not at the desk, but in a doorway."  Complaint (Dkt. No. 1) Exh. D.  A disciplinary hearing was convened by Corrections Lieutenant Santos on March 19, 2004 to address the charge set forth in the March 13, 2004 misbehavior report.  Deposition Transcript of Lawrence Toole (Dkt. No. 53-10) Exh. A at 19-20.  Upon learning from defendant Debejian that the charge was related to a grievance filed by the plaintiff regarding Corrections Officer Prusinowski, Lt. Santos adjourned the

---

[4]   The CORC decision also noted that DOCS Directive No. 4040 precludes the taking of any action in reprisal for an inmate having resorted to the grievance process, and advised the plaintiff that he was free to "write to anyone he wishes regarding the instant grievance."  Complaint (DKt. No. 1) Exh. C.

[5]    Although the misbehavior report also charged the plaintiff with harassing employees, that accusation was not pursued.  Deposition Transcript of Lawrence Toole (Dkt. No. 53-10) Exh. A at 12.

hearing.  *Id*. at 13-14; *see also* Debejian Decl. (Dkt. No. 53-7) ¶ 11.  The

hearing was never reconvened, and the disciplinary charge against the

plaintiff arising from the incident was eventually dismissed.  Deposition

Transcript of Lawrence Tool (Dkt. No. 53-10) Exh. A at 12.

II.     PROCEDURAL HISTORY

Plaintiff commenced this action on June 23, 2004.  Dkt. No. 1.  Listed

as defendants in plaintiff's complaint are Oneida Superintendent Susan A.

Connell; IGS David DeBejian; Corrections Officer Prusinowski; and K.

Bellamy, the Assistant Director of New York's Inmate Grievance Program.

Although plaintiff's claims are less than artfully stated, they appear to

include his assertions that 1) he was subjected to cruel and unusual

punishment, in violation of the Eighth Amendment, based upon defendant

Prusinowski's actions; 2) the remaining defendants are implicated in that

constitutional violation based upon their awareness of the relevant events

and failure to conduct a proper investigation and remediate the violation; 3)

plaintiff's rights were violated based upon defendants' failure to properly

process and address his inmate grievance concerning the sexual

harassment allegations; and 4) the defendants unlawfully retaliated against

him, in violation of his First Amendment rights, by arranging for the

issuance of a misbehavior report in retaliation for his complaint regarding the matter.

As their initial response to plaintiff's complaint, defendants Connell, Debejian and Bellamy moved to dismiss his claims for failure to satisfy the pleading requirements of Rules 8 and 10 of the Federal Rules of Civil Procedure.  Dkt. No. 13.  Defendant Prusinowksi filed a separate motion seeking dismissal of the sexual harassment claims against him for failure to state a legally cognizable claim that Toole's constitutional rights were violated by his conduct.  Dkt. No. 18.

By order filed March 20, 2006, acting upon a report issued by me recommending that relief, District Judge Lawrence E. Kahn granted defendant Prusinowski's motion to dismiss plaintiff's sexual harassment claim against him.  Dkt. No. 29.  Defendants' companion motion to dismiss the complaint, however, was denied based upon the court's finding that while not a model of clarity, plaintiff's complaint sufficiently apprised the defendants of the nature of plaintiff's claims to permit a meaningful investigation of those claims and formulation of a defense.  *Id*. at 2.

Following the close of pretrial discovery, defendants have now moved seeking the entry of summary judgment dismissing the remaining

8

portions of plaintiff's complaint.  Dkt. No. 53.  In their motion, defendants

argue that because the court has already determined that plaintiff's

allegations against defendant Prusinowski, even if true, are nonetheless

insufficient to support a finding of sexual harassment, none of the

remaining defendants can be held accountable for constitutional

deprivations based upon that conduct.  Defendants further submit that

plaintiff cannot maintain a cognizable constitutional claim bottomed upon

their alleged failure to properly process and address his grievance

regarding the matter, and additionally assert that because none of them

was involved in the issuance of the misbehavior report upon which

plaintiff's retaliation claim is predicated, they bear no liability for any

alleged retaliation.  Plaintiff has since submitted papers in opposition to

defendants' motion.  Dkt. No. 59.

　　　Defendants' motion, which is now ripe for determination, has been

referred to me for the issuance of a report and recommendation, pursuant

to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule

72.3(c).  *See also* Fed. R. Civ. P. 72(b).

III.    DISCUSSION

　　　A.    Summary Judgment Standard

9

Summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure.  Under that provision, summary judgment is warranted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986); *Security Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004).  A fact is "material", for purposes of this inquiry, if it "might affect the outcome of the suit under the governing law."  *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*).  A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510.  Though *pro se* plaintiffs are entitled to special latitude when defending against summary judgment motions, they must establish more than mere "metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986);

10

*but see Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 620-21 (2d Cir. 1999) (noting obligation of court to consider whether *pro se* plaintiff understood nature of summary judgment process).

When summary judgment is sought, the moving party bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion.  *Anderson*, 477 U.S. at 250 n. 4, 106 S. Ct. at 2511 n. 4; *Security Ins.*, 391 F.3d at 83.  In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material issue of fact for trial.  Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553; *Anderson*, 477 U.S. at 250, 106 S. Ct. at 2511.

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences from the facts, in a light most favorable to the nonmoving party.  *Jeffreys*, 426 F.3d at 553; *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998).  Thus, "'the judge must ask ... not whether ... the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented.'"  *Jeffreys*, 426 F.3d at 553 (quoting *Anderson,* 477

11

U.S. at 252, 106 S.Ct. at 2512).  "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment."  *Rule v. Brine, Inc.,* 85 F.3d 1002, 1011 (2d Cir. 1996).  Summary judgment is inappropriate where "review of the record reveals sufficient evidence for a rational trier of fact to find in the [non-movant's] favor."  *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (citation omitted).

    B.   Retaliation

When liberally construed, plaintiff's complaint could be deemed to include a retaliation cause of action.  The potential retaliation claim discerned from plaintiff's allegations stems from the issuance by Corrections Sergeant James Allison of the March 12, 2004 misbehavior report, and plaintiff's contention that it was prompted by his having complained of Corrections Officer Prusinowski's actions towards him. Defendants seek dismissal of this claim, citing the lack of evidence suggesting their involvement in the issuance of that disciplinary charge.

When adverse action is taken by prison officials against an inmate, motivated by the inmate's exercise of a right protected under the Constitution, including the free speech provisions of the First Amendment,

a cognizable retaliation claim under 42 U.S.C. § 1983 lies.  *See Franco v. Kelly*, 854 F.2d 584, 588-90 (2d Cir. 1988).  As the Second Circuit has repeatedly cautioned, however, such claims are easily incanted and inmates often attribute adverse action, including the issuance of misbehavior reports, to retaliatory animus; courts must therefore approach such claims "with skepticism and particular care."  *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001) (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)), *overruled on other grounds, Swierkiewicz v. Sorema N.A.,* 534 U.S. 506 (2002); *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (same).

      In order to state a *prima facie* claim under section 1983 for retaliatory conduct, a plaintiff must advance non-conclusory allegations establishing that 1) the conduct at issue was protected; 2) the defendants took adverse action against the plaintiff; and 3) there was a causal connection between the protected activity and the adverse action – in other words, that the protected conduct was a "substantial or motivating factor" in the prison officials' decision to take action against the plaintiff.  *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S. Ct. 568, 576 (1977); *Dillon v. Morano*, 497 F.3d 247, 251 (2d Cir. 2007); *Dawes*, 239

F.3d at 492 (2d Cir. 2001).  If the plaintiff carries this burden, then to avoid

liability the defendants must show by a preponderance of the evidence that

they would have taken action against the plaintiff "even in the absence of

the protected conduct."  *Mount Healthy*, 429 U.S. at 287, 97 S. Ct. at 576.

If taken for both proper and improper reasons, state action may be upheld

if the action would have been taken based on the proper reasons alone.

*Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (citations omitted).

Analysis of retaliation claims thus requires careful consideration of

the protected activity in which the inmate plaintiff has engaged, the

adverse action taken against him or her, and the evidence tending to link

the two.  When such claims, which are exceedingly case specific, are

alleged in only conclusory fashion, and are not supported by evidence

establishing the requisite nexus between any protected activity and the

adverse action complained of, a defendant is entitled to the entry of

summary judgment dismissing plaintiff's retaliation claims.  *Flaherty*, 713

F.2d at 13.

It should also be noted that personal involvement of a named

defendant in any alleged constitutional deprivation is a prerequisite to an

award of damages against that individual under section 1983.  *Wright v.*

*Smith,* 21 F.3d 496, 501 (2d Cir. 1994) (citing *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir. 1991) and *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir. 1977), *cert. denied*, 434 U.S. 1087, 98 S. Ct. 1282 (1978)).  In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show some tangible connection between the constitutional violation alleged and that particular defendant.  *See Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).   As is true of other types of claims, this principle applies to causes of action claiming unlawful retaliation.  *See Abascal v. Hilton*, No. 04-CV-1401, 2008 WL 268366, at *10 (N.D.N.Y. Jan. 30, 2008) (Kahn, D.J. and Lowe, M.J.).

In support of their motion, defendants have submitted a declaration from Corrections Sergeant Allison, the author of the misbehavior report in issue, in which he states that the decision to issue the charge was his, and his alone, and was based upon his own personal observations and determination that plaintiff had committed one or more disciplinary infractions.  *See* Allison Decl. (Dkt. No. 53-4) ¶ 4.  In addition, defendants Connell and Prusinowski have submitted declarations attesting to their official duties and responsibilities as DOCS employees, and expressly disavowing any involvement in the issuance of the misbehavior report by

Sergeant Allison.[6]  *See* Connell Decl. (Dkt. No. 53-6) ¶ 9; Prusinowski

Decl. (Dkt. No. 53-9) ¶ 3.  In response to these submissions, plaintiff has

cited no evidence linking the issuance of that report to the remaining

defendants in the action.

It may be that plaintiff's retaliation claim, particularly as against

Oneida Superintendent Connell, is predicated upon the defendants'

positions as supervisors, and his assertion that in light of their positions

they should be held accountable for any retaliation committed by

Corrections Sergeant Allison.  It is well-established, however, that a

supervisor cannot be liable for damages under section 1983 solely by

virtue of being a supervisor – there is no *respondeat superior* liability under

section 1983.  *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003);

*Wright*, 21 F.3d at 501.  A supervisory official can, however, be liable in

one of several ways; 1) the supervisor may have directly participated in the

challenged conduct; 2) the supervisor, after learning of the violation

through a report or appeal, may have failed to remedy the wrong; 3) the

supervisor may have created or allowed to continue a policy or custom

---

[6]    The record contains no evidence even remotely tending to suggest that
defendants DeBejian, the IGS at Oneida, or Bellamy, the DOCS Assistant Director of
the Inmate Grievance Program, were in any way involved in the issuance of the
misbehavior report.

under which unconstitutional practices occurred; 4) the supervisor may have been grossly negligent in managing the subordinates who caused the unlawful event; or 5) the supervisor may have failed to act on information indicating that unconstitutional acts were occurring. *Iqbal v. Hasty*, 490 F.3d 143, (2d Cir. 2007); *see also Richardson*, 347 F.3d at 435; *Wright*, 21 F.3d at 501; *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986).  None of these circumstances apply in this instance, based upon the evidence now before the court.[7]

Having carefully reviewed the record, I find no evidence from which a reasonable factfinder could conclude that any of the defendants were personally involved in the issuance of the misbehavior report forming the underpinnings of plaintiff's retaliation claim.  I therefore recommend dismissal of that claim as a matter of law.

---

[7]    When liberally construed, plaintiff's complaint could be considered to contain a claim of retaliation based on his transfer from one dormitory to another upon being made aware of his intentions to pursue his sexual harassment claims.  *See* Complaint (Dkt. No. 1) Exh. A.  Based on the record before the court, however, no reasonable factfinder could conclude that this transfer amounted to adverse action, particularly in light of the fact that the transfer was rescinded a short time after plaintiff was moved and there being no proof in the record that plaintiff lost any privileges or suffered any negative consequences as a result of the transfer.  *Contrast Walker v. Pataro*, No. 99 CIV. 4607, 2002 WL 664040, at *8 (S.D.N.Y. Apr. 23, 2002) (Peck, M.J), *adopted*, Dkt. No. 50 (S.D.N.Y. Oct. 2, 2002) (Daniels, D.J.) (considering inmate's transfer from one housing unit to another an adverse action given that the transfer resulted in prisoner losing his prison job).  Accordingly, any retaliation claim stemming from plaintiff's threatened dormitory transfer must also fail.

C.   Failure To Investigate

In an argument which also implicates personal involvement, at least tangentially, defendants assert that based upon the court's earlier finding that Corrections Officer Prusinowski's actions did not rise to a level of constitutional significance, any claim against the remaining defendants based upon their failure to investigate his allegations of unlawful harassment also fails to state a constitutional claim.

Undeniably, where a supervisory employee knows or reasonably should know of the existence of facts revealing a constitutional deprivation and, by virtue of his or her failure to properly investigate and remediate the matter, perpetuates or fails to prevent additional constitutional violations despite authority to do so, that defendant may face liability under section 1983.  *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995); *see also Meriwether v. Coughlin,* 879 F.2d 1037, 1048 (2d Cir. 1989) (indicating that supervisory liability was proper where "an official has actual or constructive notice of unconstitutional practices" by his or her subordinates "and demonstrates gross negligence or deliberate indifference by failing to act"). This principle applies equally to claims of sexual harassment; accordingly, a supervisory prison official who fails to address and take appropriate

remedial actions, upon finding the existence of actionable sexual harassment of a prison inmate, bears legal responsibility for a resulting violation of the inmate's Eighth Amendment rights. *See Doe v. Barrett*, No. 3:01-CV-519, 2006 WL 3741825, at *8-9 (D. Conn., Dec. 19, 2006); *Safadi v. Almanzar,* No. 98 Civ. 7995, 2000 WL 1738403, at *3 (S.D.N.Y. Nov. 22, 2000).  The mere failure to investigate an allegation of unconstitutional activity, without more, however, does not provide a basis for finding liability under section 1983.  *Wingate v. Horn,* No. 05-Civ.2001, 2007 WL 30100, at *6 (S.D.N.Y. Jan. 4, 2007) (citing cases).

In this instance, the court has already determined that Officer Prusinowski's actions, however boorish or offensive they may have been, if substantiated, did not rise to a level of constitutional significance.  It logically follows, based upon that finding, that neither could the defendants now accused of failing to investigate and remediate that conduct, already found not to be actionable under section 1983, be held liable for a constitutional deprivation.  *See Linares v. Mahunik,* No. 05 Civ. 625, 2006 WL 2595200, at *11 (N.D.N.Y. Sept. 11, 2006) (Sharpe, D.J. and Treece, M.J.) (holding plaintiff could not "sustain a supervisory liability claim as there was no wrong for [supervisor-defendant] to remedy since there [was]

no constitutional violation").  I therefore recommend dismissal of plaintiff's

failure to investigate claims against the defendants.

D.    Failure To Process Plaintiff's Grievance

In a related but arguably distinct claim, plaintiff contends that his

constitutional rights were violated based upon the defendants' failure to

properly process and investigate his grievance regarding defendant

Prusinowski's actions.  This claim is asserted against defendant David

Debejian, the Inmate Grievance Supervisor at Oneida; defendant Connell,

the Superintendent at Oneida;  and defendant Bellamy, the Assistant

Director of the DOCS Inmate Grievance Program.  Defendants also seek

dismissal of this claim as a matter of law.

Since New York's inmate grievance program ("IGP"), provides a

vehicle to permit inmates to seek internal remedial action within the

relevant prison facility before commencing legal action complaining of their

conditions of confinement, *see* 7 N.Y.C.R.R. § 701 *et. seq.* (setting forth

the stages of the inmate grievance resolution process); *see also Rodriguez

v. Hahn,* 209 F. Supp. 2d 344, 347 (S.D.N.Y. 2002) (requiring New York

State prison inmates to avail themselves of the DOCS IGP three step

administrative process for the resolution of grievances), and allows them to

satisfy their exhaustion requirement under 42 U.S.C. § 1997e, in order to

bring an action such as this.  *Soto v. Belcher*, 339 F.Supp.2d 592, 595

(S.D.N.Y. 2004) (An inmate must first exhaust administrative remedies that

are available before he may file an action in federal court).  It is well-

established, however, that a prison inmate has no constitutional right of

access to such an internal grievance process.  *Rhodes v. Hoy,* No. 05-CV-

836, 2007 WL 1343649, at *6 (N.D.N.Y. May 5, 2007) (Scullin, J.) (noting

that inmates have "no constitutional right of access to the established

inmate grievance program"); *Davis v. Buffardi,* No. 01 CV0285, 2005 WL

1174088, at *3 (N.D.N.Y. May 4, 2005) (Magnuson, J.) ("[P]articipation in

an inmate grievance process is not a constitutionally protected right.")

(citations omitted).  Accordingly, plaintiff's allegations to the effect that the

defendants failed to afford him an adequate investigation and remedial

action under section 1983 response to his grievance, provides no basis for

finding liability against them.  *Cancel v. Goord,* No. 00. CIV. 2042, 2001

WL 303713, at *3 (S.D.N.Y. Mar. 29, 2001) (holding that "inmate grievance

procedures are not required by the Constitution" and therefore failure to

see to it that grievances are properly processed does not create a claim

under section 1983).  I therefore recommend dismissal of this remaining

claim against the defendants, as a matter of law, based upon the lack of

any underlying constitutional obligation on their part to afford plaintiff

meaningful access to the internal grievance procedure, and to investigate

and properly determine any such grievance.

IV.    SUMMARY AND RECOMMENDATION

Pivotal to the plaintiff's claims in this case are actions of Corrections

Officer Prusinowski, characterized by him as constituting unlawful sexual

harassment, but already found by the court not to rise to a level of

constitutional significance, and defendants' alleged failure to properly

address and remediate those actions.  In light of the court's finding that

Corrections Officer Prusinowski's actions, as alleged by the plaintiff, did not

constitute cruel and unusual punishment or otherwise result in a

cognizable unconstitutional deprivation, and the fact that the Constitution

does not guarantee him access to the internal grievance process, I

recommend dismissal of plaintiff's claims.

To the extent that plaintiff has also asserted a retaliation cause of

action claiming that the issuance by Correction Sergeant Allison, who is

not a party to the action, of a misbehavior report accusing Toole of

misconduct was motivated by plaintiff's filing of a grievance concerning

Corrections Officer Prusinowski's actions, plaintiff has offered no evidence from which a reasonable factfinder could determine that the defendants were involved in, or in any way prompted, the issuance of that misbehavior report.  Plaintiff's retaliation claim is therefore also subject to dismissal as a matter of law.  It is therefore hereby

RECOMMENDED that defendants' motion for summary judgment (Dkt. No. 53) be GRANTED, and that the remaining claims contained within the plaintiff's complaint be DISMISSED.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report. Objections shall be filed with the Clerk of the Court.  FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

The Clerk of the Court is directed to serve a copy of this report and recommendation upon the parties in accordance with the court's local rules.

Dated:     August 1, 2008
            Syracuse, NY

David E. Peebles
U.S. Magistrate Judge